# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
## No. 22-1252V

```
* * * * * * * * * * * * * * * * * * * * * * * *  *
                                                 *
                                                 *
WENDY DOUGHERTY,                                 *
                                                 *
                 Petitioner,                     *   Special Master Jennifer A. Shah
                                                 *
                                                 *
v.                                               *
                                                 *
                                                 *   Filed: May 18, 2026
SECRETARY OF HEALTH AND                          *
HUMAN SERVICES,                                  *
                                                 *
                                                 *
                 Respondent.                     *
                                                 *
* * * * * * * * * * * * * * * * * * * * * * * *  *
```

*Gil Daley, II*, Law Office of Gil L. Daley, II, P.C, Fort Worth, TX, for Petitioner.
*Ryan Nelson,* United States Department of Justice, Washington, DC, for Respondent.

### DECISION ON ATTORNEYS' FEES AND COSTS[1]

## I.    Procedural History

On September 7, 2022, Wendy Dougherty ("Petitioner" or "Ms. Dougherty") filed a petition seeking compensation under the National Vaccine Injury Compensation Program ("the Vaccine Program").[2]  Pet., ECF No. 1.  Petitioner alleged she suffered injuries as a result of an influenza ("flu") vaccine she received on September 13, 2019.  *Id*. at 1-2.  Petitioner later filed an amended petition clarifying her injury included numbness and swelling of her left tongue, jaw, arm, and hand that began approximately five hours after her vaccination.  Am. Pet. at 1, ECF No.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services).  This means the Decision will be available to anyone with access to the internet.  In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.  If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. §§ 300aa-10–34 (2018)) (hereinafter "Vaccine Act" or "the Act").  All subsequent references to sections of the Vaccine Act shall be to the pertinent subparagraph of 42 U.S.C. § 300aa.

25. That reaction then led Petitioner to suffer from chronic regional pain on the left side of her body. *Id.* at 2.

Along with the original petition, Petitioner filed a letter from Kevin Davis, P.A., who stated that Petitioner was his patient and had "experienced a vaccination reaction to an influenza vaccination," which in turn caused her to suffer "chronic regional pain to the left side of her body." Ex. 4 at 1. On August 4, 2023, Petitioner filed an exhibit styled as an "expert report" from Shane Stone, M.D., one of Petitioner's physicians. Ex. 11. In nearly identical terms to the letter from PA Davis, Dr. Stone opined that Petitioner "experienced a vaccination reaction to an influenza vaccination that she received on September 13, 2019. This reaction has caused her to suffer with chronic regional pain to the left side of her body making it difficult to function at times due to the extreme sensitivity and fatigue that occurs." *Id.* Dr. Stone articulated no mechanism or explanation for how the flu vaccine could or did cause Petitioner's injury, and he did not state a clear diagnosis. No CV was filed for Dr. Stone, though one was filed for PA Davis. Ex. 22.

On October 10, 2023, Petitioner filed the amended petition, along with an affidavit. Ex. 13. The affidavit stated that the September 13, 2019 flu vaccine caused her to suffer "chronic regional pain to her left side of her body… and fatigue." *Id.* at 2.

On June 18, 2024, Respondent filed a Rule 4(c) Report arguing this case was not appropriate for compensation because "there is not a preponderance of evidence that demonstrates petitioner suffered any injury or condition that was caused-in-fact by a flu vaccination." Resp't's Rep. at 1-2. Specifically, Respondent noted Petitioner did not allege a Table injury, nor did she allege another injury compensable by the Vaccine Act. *Id.* at 7-8. Also, Petitioner had not provided evidence demonstrating how the flu vaccine caused her condition. *Id.* at 10-11.

This case was reassigned to me on August 13, 2024. ECF No. 42. On August 19, 2024, Petitioner filed another expert report from Dr. Stone. Ex. 17. In this report, Dr. Stone chronicled Petitioner's complex prior medical history and listed her medical problems as including neuropathy, sensorineural hearing loss, depression, anxiety, and chronic pain consisting of reflexive sympathetic disorder and complex regional pain syndrome, all triggered by the influenza vaccination. *Id.* Dr. Stone noted that these symptoms were all on Petitioner's left side, where she received her vaccination, and "[n]one of these symptoms or disorders were prior to the vaccine except some anxiety related to anticipatory hysterectomy surgery." *Id.* Once again, Dr. Stone did not opine on how the flu vaccine caused Petitioner's condition.

After the second report from Dr. Stone was filed, the parties exchanged informal communications with my law clerk, in which Respondent's counsel argued the report was insufficient to support Petitioner's claim. In response, Petitioner's counsel stated he was amenable to filing another expert report. A deadline of January 21, 2025, was set to file a report.

On January 3, 2025, Petitioner filed a report from Derek Lang, D.O. Ex. 18. Dr. Lang, a family medicine doctor, had evaluated Petitioner on October 15, 2024, and stated: "This letter is being written to establish that we have diagnosed a permanent condition for her." *Id.* Dr. Lang wrote that Petitioner

> experienced a nearly immediate reaction in her left upper extremity. This was followed by generalized symptoms that became progressively worse over the hours following the vaccination administration. The symptoms included but are not limited to localized edema of the tongue and face, hypertension, regional weakness/paresthesia/pain that became severe (9/10), diaphoresis, and presyncope.
>
> In my view, based on these facts, it is conclusive that the influenza vaccine is the cause of her medical complications. I do not see a reasonable alternative, since the circumstances surrounding the reaction occurred with very short proximity in time between the vaccination and onset of her syndrome that quickly progressed into the severity that exists currently.

*Id.* Other than the post-vaccination timing, Dr. Lang did not expressly state what Petitioner's exact injury was, nor how the flu vaccine could or did cause her injuries. *See id.*

On January 24, 2025, I held a status conference with the parties. ECF No. 50. I informed Petitioner's counsel that the reports/letters from Petitioner's treating physicians were insufficient to prove entitlement. *See id.* at 1. These reports held some evidentiary weight but did not address the *Althen* prongs. *See id.* Mr. Daley stated he understood and would continue looking for an expert to opine in this case. *See id.*

On March 19, 2025, Petitioner filed another letter from Dr. Lang. Ex. 19.2. Dr. Lang provided a more detailed summary of Petitioner's prior medical visits and broadly stated that "in my career I have never seen so many physicians and other medical personnel corroborating a vaccine injury, with no dissenting opinion." *Id.* at 2. Dr. Lang repeated his prior opinion that Petitioner had a "vaccine injury" but did not state what the exact injury was. *See generally id.* Dr. Lang once again did not provide an opinion regarding how the flu vaccine caused Petitioner's injury. *See id.*

On March 25, 2025, I granted Petitioner's motion for an extension of time to file another expert report. ECF No. 66. I provided a detailed outline of what I believed an expert report needed to address:

- The expert should delineate a specific vaccine-caused diagnosis or diagnoses for Petitioner, citing to the medical records.
- The expert should opine on whether Petitioner's alleged vaccine injury endured for more than six months after vaccination.
- The expert should opine on how Petitioner's alleged condition was caused in fact by the vaccine, addressing all of the *Althen* prongs.
- The expert should address Petitioner's November 28, 2019 car accident and its potential causal role in Petitioner's condition.

*Id.* at 2. Petitioner was given until April 23, 2025, to file an expert report. *Id.*

Petitioner requested two extensions of time to file another report. *See* ECF Nos. 67, 68. In her second extension motion, Petitioner advised that she asked David Simpson, M.D., to provide an expert opinion in this case, but he declined. ECF No. 68. Petitioner's motions were granted. *See* non-PDF Orders dated 4/24/2025 and 5/27/2025.

On June 10, 2025, Respondent filed a status report arguing that Petitioner had failed to show by a preponderance of the evidence that the flu vaccination she received on September 13, 2019 caused her left-sided chronic regional pain, and a sixth expert report would not satisfy Petitioner's burden. ECF No. 69.

On June 26, 2025, Petitioner filed two additional reports from Dr. Lang. Exs. 23, 24. Dr. Lang opined that Petitioner satisfied the criteria for complex regional pain syndrome ("CRPS"). Ex. 23 at 1. CRPS starts with a triggering event from an injury, surgery, or trauma, which causes activation of the peripheral immune system. *Id.* Neurogenic inflammation follows, and the central nervous system releases more cytokines and lowers the threshold for pain signaling, which leads to allodynia and hyperalgesias. *Id.* at 2. Dr. Lang opined that Petitioner suffered an allergic reaction to the subject vaccine, which triggered her CRPS. *Id.* Dr. Lang filed a separate report/letter regarding the mechanism of how a flu vaccination could cause an allergic reaction. Ex. 24.

On July 1, 2025, I issued a Rule 5 Order with my preliminary thoughts on this case. ECF No. 73. I informed Petitioner that she had not clearly pled a specific injury. Also, the expert reports filed by Petitioner were not from qualified experts in rheumatologic, allergic, autoimmune, or neurologic diseases. The experts also did not address the *Althen* prongs or support any of their theories with any scientific or medical literature. I warned Petitioner that I had concerns regarding reasonable basis of this claim if it continued any further.

On September 19, 2025, Petitioner filed another report from Dr. Lang. Ex. 25. I gave Respondent a deadline of October 22, 2025, to file an expert report, motion, or status report indicating how he would like to proceed. *See* non-PDF Scheduling Order on 9/22/2025.

On October 17, 2025, the parties filed a Joint Stipulation of Dismissal, which I adopted into an Order Concluding Proceedings on the same day. ECF Nos. 78, 79.

Also on October 17, 2025, Petitioner filed an application ("Fees App.") for final attorneys' fees and costs. ECF No. 80. Petitioner requests a total of $55,297.27 in attorneys' fees and costs. *Id.* at 3. Petitioner affirmed that she did not incur any personal costs. Fees App., Ex. B. Respondent responded to the motion ("Fees Resp.") on October 31, 2025. ECF No. 82. Respondent "defers to the Court [on] whether petitioner's claim had a reasonable basis prior to the January 24, 2025 status conference and oppose[d] an award for all fees and costs incurred thereafter due to a lack of reasonable basis." *Id.* at 1.

Petitioner filed a reply ("Fees Reply") on October 31, 2025, with additional filings, such as Mr. Daley's affidavit, Mr. Daley's communications with Dr. Simpson, a decision awarding fees in a CRPS case, and decisions awarding Dr. Simpson's requested hourly rate of $700.00 on

November 2 and 7, 2025.  ECF Nos. 84-91.[3]

This matter is now ripe for consideration.

## II.    Relevant Medical History

On September 13, 2019, Petitioner received a flu vaccination in her left arm at Cook Children's Occupational Health Service ("OHS"), where she was employed as a neonatal intensive care unit nurse.  Ex. 9 at 8.  The same day, she reported feeling numbness and swelling in the left side of her tongue, jaw, and hand.  *Id.*  She was given Allegra and Benadryl but declined further treatment.  *Id.*

On September 15, 2019, Petitioner called OHS to discuss concerns after receiving the flu shot.  Ex. 9 at 8.  She worried she had rheumatoid arthritis but had not reported that to her primary care physician ("PCP"); her left arm still felt heavy, her tongue was numb, and her jaw was tingling.  *Id.*  She believed this was a "neuromuscular" issue and wanted to know if she could get a rheumatoid arthritis test.  *Id.*  She reported that she was hypersensitive to the flu vaccine, as were her mother and children.  *Id.*  Petitioner was advised that she seemed to be experiencing normal flu vaccine symptoms but if she wanted a referral, one would be given.  *Id.*

On September 17, 2019, Petitioner spoke with RN Kari Anderson to initiate a worker's compensation claim so that she could go to the emergency department ("ED").  Ex. 9 at 9.  The same day, Petitioner presented to the ED for "Allergic Reaction," reporting "left sided facial pain and numbness/tingling to left arm after receiving flu shot on [F]riday."  Ex. 1 at 94.  Petitioner also reported that she had experienced tongue swelling post-vaccination that had nearly completely resolved.  *Id.*  She also reported that she experienced "similar though less-persistent symptoms last year after receiving the flu shot."  *Id.*  She was recommended to follow up with her PCP and rheumatology but to return to the ED if her symptoms got worse.  *Id.* at 96.  Petitioner had an unremarkable brain MRI; her cervical spine MRI revealed "mild degenerative changes in the lower cervical spine."  *Id.* at 97.

On September 18, 2019, Petitioner was seen by Kenneth Baldwin, D.O., for her worker's compensation claim.  Ex. 6 at 19-21.  Petitioner reported symptoms consistent with her earlier accounts.  *See id.* at 20.  She was given methylprednisolone and was allowed to return to work without restrictions.  *Id.* at 19.

Petitioner returned to the ED on September 19, 2019, and was seen by Robert Phariss, D.O.  Ex. 1 at 132.  She reported her initial allergic reaction symptoms post-vaccination, but added that on Tuesday (September 18), "she felt like she would pass out and her tongue was swelling and painful" and at the moment, her entire mouth was numb, her left hand was weak and her legs "are jumpy but not numb."  *Id.*  The summary of the visit stated:

[Patient] feels like there is some kind of neurological problems due

---

[3]  In addition to the original fee application, Mr. Daley filed three additional items styled as "Motions for Attorney Fees," which were not actual motions and should not have been characterized as such on the docket.  ECF Nos. 84-86.

to her flu vaccination and is mostly concerned about Guillain Barre syndrome ("GBS"). I discussed with her that I thought [t]hat it was highly unlikely that she did [] have Guillain Barre and that the only way to diagnose it would be to have a lumbar puncture. Patient wished to have lumbar puncture as she is very concerned about her symptoms…. Normal amount of protein in CSF does [rule] out GBS. Reassured patient that I suspect this is [an] allergic reaction with neuropathy type symptoms. Instructed her not [to] get a flu vaccination next year. Will start her on steroids and pain medications.

*Id.* at 135. Dr. Phariss consulted neurology, which agreed with his assessment and agreed to see Petitioner as an outpatient. *Id.*

On September 26, 2019, Petitioner was seen by neurologist Hamid Kadiwala, M.D., for headaches. Ex. 15 at 22. She reported still experiencing numbness, anxiety, and panic attacks. *Id.* Additional MRIs were completed, which were unremarkable. *Id.* at 26-30. Petitioner had follow-up appointments with Dr. Kadiwala on October 31 and November 21, 2019, for continued numbness in her left leg, ear, jaw, and neck area. *Id.* at 12, 16. During these appointments, she reported additional symptoms of feeling pale and stiff, with intermittent jerking and a feeling of passing out. *Id.*

Petitioner was involved in a motor vehicle collision as a front seat passenger on November 28, 2019. Ex. 1 at 168. She presented to the ED the next day with left shoulder, rib, and neck pain, though she denied any numbness or tingling. *Id.*

On December 2, 2019, Petitioner saw Kevin Davis, PA, at Virtue Medical Group to establish new care. Ex. 7 at 15. Petitioner reported being in a car accident and said she was still experiencing neck and back pain and "pain shooting down left side of back to tailbone," despite being on Robaxin[4] and lidocaine strips. *Id.* She also reported coughing and sneezing a lot. *Id.*

Petitioner returned to Dr. Kadiwala on January 23, 2020, reporting continued symptoms of numbness and pain in her left leg, ear, jaw, and neck. Ex. 8 at 17. She reported that the numbness was "improving to near resolution," but the etiology of her symptoms was unclear. Ex. 8 at 17. Dr. Kadiwala recommended an autoimmune, rheumatology, or allergist consultation to determine whether she should receive vaccinations in the future. *Id.* She occasionally experiencing pain to touch and sensitivity to sound but was "generally happy with the improvement." *Id.*

On December 10, 2020, Petitioner returned to PA Davis complaining of left-sided pain in her body. Ex. 7 at 78. Petitioner had gone to Disneyland, where she experienced pain staying in one position for too long, including sitting or standing. *Id.* She said that some mornings she would

---

4    Robaxin:    trademark    for    preparations    of    methocarbamol. *Robaxin*, DORLAND'S, https://www.dorlandsonline.com/dorland/definition?id=44009 (last accessed on May 12, 2026). Methocarbamol: a skeletal muscle relaxant, administered orally, intramuscularly, or intravenously in the treatment    of    painful    musculoskeletal    conditions. *Methocarbamol*, DORLAND'S, https://www.dorlandsonline.com/dorland/definition?id=30925 (last accessed on May 12, 2026).

wake up with severe joint pain starting from her jaw/ear and radiating down the left side of her body all the way to her toes. *Id.* She experienced tingling and numbness in her fingertips and toes. *Id.* She was given tramadol for her pain and was referred to a pain management specialist. *Id.* at 79.

On March 29, 2021, Petitioner had a telemedicine appointment with PA Davis

> with concerns regarding a reaction she had to the flu vaccination. [Patient] has a current case on the injuries and the side effects she is still dealing with after the vaccination. [Patient] is requesting to have a letter written on her past [experiences] and [struggles] that she has to endure after the vaccination incident.

Ex. 7 at 73.

On September 8, 2021, Petitioner had another telemedicine visit with PA Davis at which she reported that her pain intensified when the weather changed and when her stress increased. Ex. 7 at 116. She was prescribed tramadol for when her pain intensified. *Id.*

On January 28, 2022, PA Davis signed a form for Petitioner to take leave from work from January 18-February 1, 2022, due to symptomatic COVID-19 infection. Ex. 7 at 138, 144-45.

On September 2, 2022, PA Davis penned another letter for Petitioner, submitted as Ex. 11 in this case, saying that the flu vaccination had caused Petitioner to suffer "chronic regional pain to the left side of her body making it difficult to function at times due to the extreme sensitivity and fatigue that occurs." Ex. 7 at 146; Ex. 11. Due to her condition, she suffers from "a mild depressive disorder and increased anxiety to any medication and injections." *Id.*

On October 15, 2024, Petitioner saw Derek Lang, D.O., as a new patient. Ex. 21 at 6. Her chief complaint was a vaccine injury from her 2019 flu vaccination. *Id.* She noted that stress, illness, temperature change, and physical movement made her symptoms worse. *Id.*

Emails were later exchanged between Petitioner and Dr. Lang that included a request by Petitioner for Dr. Lang to provide a letter of probable cause that the flu vaccine caused her medical complications. Ex. 21 at 7. Dr. Lang noted that he had not yet received all her previous medical records, and there should be a discussion on whether he was "the right person to write the 'letter of probable cause;'" he noted that there was "a difference between a legal battle and a declaration of vaccine exemption status" and he did not claim to be a "legal expert." *Id.* He did believe her vaccine exempt status "is about as clear as a case can be." *Id.* Despite these reservations, Dr. Lang submitted multiple reports on Petitioner's behalf, as described above. *See* Exs. 19, 23, 24, 25.

## III.    Legal Standards for an Award of Fees and Costs

Section 15(e)(1) of the Vaccine Act permits a special master to award "reasonable attorneys' fees, and other costs." § 300aa–15(e)(1)(A)–(B). Petitioners are entitled to an award of reasonable attorneys' fees and costs if they are entitled to compensation under the Vaccine Act;

furthermore, even if they are unsuccessful, they are eligible for such an award so long as the special master finds that the petition was filed in good faith and with a reasonable basis. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008).

If a petitioner is eligible for an award of fees and costs, it is "well within the special master's discretion" to determine the reasonableness of such fees and costs. *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521–22 (Fed. Cir. 1993); *see also Hines v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (1991) ("[T]he reviewing court must grant the special master wide latitude in determining the reasonableness of both attorneys' fees and costs."). Applications for attorneys' fees must include contemporaneous and specific billing records that describe the work performed and the number of hours spent on said work. *See Savin v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 313, 316–18 (2008), *aff'd*, No. 99-573V, 2008 WL 2066611 (Fed. Cl. Spec. Mstr. Apr. 22, 2008).

Reasonable hourly rates for attorneys' fees are determined by looking at the "prevailing market rate" in the relevant community. *See Blum v. Stenson*, 465 U.S. 886, 895 (1984). The "prevailing market rate" is akin to the rate "in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 895 n.11. The petitioner bears the burden of proving that the requested hourly rate is reasonable. *Id.*

### A. Good Faith

The good faith requirement is assessed through a subjective inquiry. *Di Roma v. Sec'y of Health & Hum. Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). The requirement "focuses upon whether [P]etitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Hum. Servs.*, 36 Fed. Cl. 114, 121 (1996). Thus, so long as Petitioner had an honest belief that her claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health & Hum. Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993 WL 496981, at *1); *Turner*, 2007 WL 4410030, at *5.

### B. Reasonable Basis

Unlike the good faith inquiry, a reasonable basis analysis requires more than just evaluating a petitioner's belief in his claim. *Turner*, 2007 WL 4410030, at *6-7. Instead, the claim must be supported by objective evidence. *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017). "[I]n deciding reasonable basis the [s]pecial [m]aster needs to focus on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery." *Santacroce v. Sec'y of Health & Hum. Servs.*, No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Jan. 5, 2018).

Although the Vaccine Act does not define the quantum of proof needed to establish reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Chuisano v. United States,* 116 Fed. Cl. 276, 283 (2014).

The Court of Federal Claims affirmed in *Chuisano* that "[a]t the most basic level, a petitioner who submits no evidence would not be found to have reasonable basis…." *Id.* at 286; *see* 42 U.S.C. § 300aa-13(a)(1) (special masters cannot award compensation "based on the claims of petitioner alone, unsubstantiated by medical records or by medical opinion"). The *Chuisano* Court agreed that a petition that relied only on temporal proximity and a petitioner's affidavit did not have a reasonable basis. *Id.* at 290; *see also Turpin v. Sec'y of Health & Hum. Servs.*, No. 99-564V, 2005 WL 1026714, *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005) (finding no reasonable basis when petitioner submitted an affidavit and no other records); *Brown v. Sec'y of Health & Hum. Servs.*, No. 99-539V, 2005 WL 1026713, *2 (Fed. Cl. Spec. Mstr. Mar. 11, 2005) (finding no reasonable basis when petitioner presented only e-mails between her and her attorney).

The Federal Circuit has clarified that "more than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis." *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1346 (Fed. Cir. 2020) (finding petitioner submitted objective evidence supporting causation when she submitted medical records and a vaccine package insert); *see also James-Cornelius v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1380 (Fed. Cir. 2021) (finding that "the lack of an express medical opinion on causation did not by itself negate the claim's reasonable basis.").

When determining if a reasonable basis exists, a special master may consider a number of factors, including "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa v. Sec'y of Health & Hum. Servs.*, 138 Fed. Cl. 282, 289 (2018). This approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis. *Hamrick v. Sec'y of Health & Hum. Servs.*, No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

## IV.     The Parties' Arguments

Respondent argues that Petitioner lost reasonable basis for her claim after the January 24, 2025 status conference, and he opposes any award for fees or costs after that date. Fees Resp. at 1. Respondent asserts that at the January 24 conference, I advised for the second time that Petitioner had failed to present evidence of vaccine causation, and the billing records from that same day showed Petitioner's counsel researching causation, which should have made it "abundantly clear that petitioner could not provide more than a mere scintilla of evidence to support causation in this case." *Id.* at 8. Respondent asserts that in subsequent expert reports from Dr. Lang, causation remained unaddressed, as did the *Althen* prongs. *Id.* at 9.

Respondent further contends that to the extent fees and costs are awarded, Dr. Simpson's rate should be reduced. Fees. Resp. at 11. The highest expert rates should be reserved "for the most qualified experts on the most complex medical issues." *Id.* Dr. Simpson's invoice was excessive, as there may have been a prior balance already paid; also, his invoice lacked details concerning the work performed. *Id.* at 12, n.6. Lastly, Respondent identifies a number of duplicate billing and block-billed entries that he says are "'excessive, redundant, or otherwise unnecessary." *Id.* at 13 (citing *Saxton*, 3 F.3d at 1521 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

9

Petitioner replies that reasonable basis was maintained throughout this case. All of Petitioner's treating physicians have repeatedly opined that she had a post-vaccination reaction. Fees Reply at 4. Respondent has not provided any expert opinion to refute Petitioner's filings. *Id.* Petitioner also notes that "Should Respondent succeed, [Petitioner] will owe Drs. Simpson and Lang $11,950.00." *Id.* at 1.

## V.    Discussion

### A. Good Faith and Reasonable Basis

This case was never well substantiated. The petition and amended petition alleged nonspecific injuries. Pet. at 1 (alleging "injuries [Petitioner] sustained, caused by a flu vaccination on September 13, 2019."); Am. Pet. at 2 (alleging "chronic regional pain to the left side of her body making it difficult to function at times due to the extreme sensitivity and fatigue that occurs."). Petitioner was given multiple opportunities to file expert evidence. She filed several letters from her treating medical providers that attributed her post-vaccination medical history to the subject flu vaccine, but these did not adequately articulate a clear diagnosis or explain how the flu vaccine caused her symptoms, as required. The left-sided pain Petitioner experienced after her motor vehicle collision just two months after vaccination was never adequately addressed. Dr. Lang did eventually try to articulate a causation theory that involved the basics of immunology, but he did not explain his qualifications to opine on that question. None of the filed letters was accompanied by any medical literature.

Drs. Lang and Stone also opined that Petitioner's correct diagnosis was CRPS, but that diagnosis was never made by any treating physician outside the context of an expert report for litigation purposes. It does not appear from the records that Dr. Stone ever treated Petitioner himself; PA Davis is listed as Petitioner's provider. *See* Ex. 7 at 2. Dr. Lang did not see Petitioner until five years after the vaccination, and even then he did not diagnose CRPS specifically.

Nonetheless, I disagree with Respondent that Petitioner lost a reasonable basis for her claim, either after the January 24, 2025 status conference or thereafter. The medical records showed that Petitioner developed post-vaccination symptoms that some of her treating providers characterized as a vaccine injury, however ill-defined. She did file letters from doctors stating this, though they were insufficient to establish her entitlement to compensation. On July 1, 2025, I warned Petitioner for the first time that she might lose reasonable basis moving forward without better expert evidence. While Petitioner went on to submit one last report from Dr. Lang, she voluntarily dismissed her case soon thereafter.[5]

Ultimately, there were many flaws in this case. But the bar for recovering attorneys' fees and costs is much lower than that for finding entitlement. *Chuisano v. United States*, 116 Fed. Cl. 276, 283 (2014) (stating the burden of establishing reasonable basis "is something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim."). I conclude Petitioner filed the case in good faith and maintained a reasonable basis for it; notably, she

---

[5] The billing records submitted with the fee application show Mr. Daley billed 2.6 hours after the July 1, 2025 Rule 5 Order was issued, plus an unknown amount for email correspondence, which, as discussed below, was inappropriately block billed. Fees App. at 9-10.

willingly dismissed the case when it became clear she could not produce adequate evidence to substantiate her claim. As such, I will consider the entirety of her requested attorneys' fees and costs.

### B. Attorneys' Fees

Petitioner requests a total of $41,630.30 in attorneys' fees.

1. Reasonable Hourly Rate

As noted, a reasonable hourly rate is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 895 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of [P]etitioner's attorney." *Rodriguez v. Sec'y of Health & Hum. Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349).

*McCulloch* provides the framework for determining the appropriate compensation for attorneys' fees based upon the attorneys' experience. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the reasoning of *McCulloch* and issues an annual Fee Schedule based on that decision.[6]

Petitioner requests compensation for Mr. Gil Daley at the following hourly rates: $300.00 for work performed between 2018-2023; and $427.00 for work performed from June 28, 2023 and beyond.[7] ECF No. 87. These hourly rates are consistent with what Mr. Daley has been previously awarded. *See, e.g.*, *Payne v. Sec'y of Health & Hum. Servs.*, No. 20-1714V, 2023 WL 4854736 (Fed. Cl. Spec. Mstr. June 28, 2023); *Mendoza v. Sec'y of Health & Hum. Servs.*, No. 23-1318V, 2025 WL 3907720 (Fed. Cl. Spec. Mstr. Dec. 8, 2025); *cf. Ramirez v. Sec'y of Health & Hum. Servs.*, No. 16-1180V, 2021 WL 3116079, at *2 (Fed. Cl. Spec. Mstr. June 2, 2021) (awarding Mr. Daley an hourly rate of $325.00 for work performed between 2019-21). I will award Mr. Daley the hourly rates he has requested.

Mr. Daley did not request a paralegal rate for the paralegal tasks he performed. I expound upon that below.

2. Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Petitioner bears the burden of establishing that the rates charged, hours expended, and costs incurred are reasonable. *Wasson v. Sec'y of Health & Hum.*

---

[6] The 2015-2025 Fee Schedules are available at: https://www.uscfc.uscourts.gov/osm-attorneys-forum-hourly-rate-fee-schedules.

[7] For the sake of clarity, Mr. Daley's $427.00 hourly rate beginning in June 28, 2023, is hereby referred to as his 2024-26 hourly rate.

*Servs.*, 24 Cl. Ct. 482, 484 (1993).  Ultimately, however, it is "well within the [s]pecial [m]aster's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton*, 3 F.3d at 1522.  Such a reduction may be made *sua sponte*, even in the absence of enumerated objections from Respondent.  *Sabella v. Sec'y of Health & Hum. Servs.*, 86 Fed. Cl. 201, 208-09 (2009); *Savin*, 85 Fed. Cl. at 318.

A special master need not engage in a line-by-line analysis of a petitioner's fee application when reducing fees.  *Broekelschen*, 102 Fed. Cl. at 729.  Instead, the special master may make a global reduction to the total amount of fees requested.  *See Hines*, 22 Cl. Ct. at 753 ("special masters have wide latitude in determining the reasonableness of both attorneys' fees and costs"); *Hocraffer v. Sec'y of Health & Hum. Servs.*, No. 99-533V, 2011 WL 3705153 (Fed. Cl. Spec. Mstr. July 25, 2011), *mot. for rev. denied*, 2011 WL 6292218, at *13 (Fed. Cl. 2011) (denying review of the special master's decision and endorsing "a global – rather than line-by-line – approach to determine the reasonable number of hours expended in this case").

### a.  Administrative and Clerical Tasks

Mr. Daley, as a solo practitioner, performed a number of tasks typically handled by a paralegal.  It is well established that billing for clerical and other secretarial work is not permitted in the Vaccine Program.  *Rochester v. United States*, 18 Cl.Ct. 379, 387 (1989) (denied an award of fees for time billed by a secretary and found that "[these] services … should be considered as normal overhead office costs included within the attorneys' fees rates"); *Mostovoy v. Sec'y of Health & Hum. Servs.*, 2016 WL 720969, at *5 (Fed. Cl. Spec. Mstr. Feb. 4, 2016).  The total number of hours spent by Mr. Daley for administrative tasks between 2020-2023 was 4.1 hours and between 2024-2025 was 4.0 hours, which results in a total deduction of $2,938.00.[8]

### b.  Block Billing

Mr. Daley billed 9.1 hours for "Emails [with] Client, Court, Healthcare Providers & Counsel (91 emails)" from 2020-2023.  He similarly billed 30.9 hours for 309 emails exchanged in 2024-2025.  These tasks were improperly block billed.  Block billing is disfavored in the Program, because billing multiple tasks together in a single time entry frustrates the court's ability to assess the reasonableness of the request.  See *Broekelschen v. Sec'y of Health & Hum. Servs.*, 07-137V, 2008 WL 3903710 (Fed. Cl. Spec. Mstr. Dec 15, 2006)2008 WL 3903710 (Fed. Cl. Spec. Mstr. Dec 15, 2006).  For that reason, The Vaccine Program's Guidelines for Practice state that "[e]ach task should have its own line entry indicating the amount of time spent on that task."[9] Mr. Daley did submit a log of his correspondence with Ms. Doughtery and Dr. Simpson, providing some substantiation of the time he spent on such correspondence, but he did not submit any such documentation for other correspondence.  I will apply a 10% deduction to the total number of hours billed by Mr. Daley for correspondence.  That results in a deduction of $1,592.43.[10]

---

[8]  ($300.00 x 4.1 hours) + ($427.00 x 4.0 hours) = $2,938.00

[9]  The Guidelines for Practice can be found at the link below. Please refer to page 76: https://www.uscfc.uscourts.gov/guidelines-practice-under-national-vaccine-injury-compensation-program

[10]  (($300.00 x 9.1 hrs) x 0.1) + (($427.00 x 30.9 hrs) x 0.1) = $1,592.43

### c. Research into the Vaccine Program

"[I]t is inappropriate for counsel to bill time for educating themselves about basic aspects of the Vaccine Program." *Matthews v. Sec'y of Health & Human Servs.*, No. 14-1111V, 2016 WL 2853910, at *2 (Fed. Cl. Spec. Mstr. Apr. 18, 2016). "An inexperienced attorney may not ethically bill his client to learn about an area of law in which he is unfamiliar. If an attorney may not bill his client for this task, the attorney may also not bill the Program for this task." *Carter v. Sec'y of Health & Hum. Servs.*, No. 04-1500V, 2007 WL 2241877, at *5 (Fed. Cl. Spec. Mstr. July 13, 2007). In 2025, several years after filing this case, Mr. Daley billed 2.3 hours to "research causation." *See* Fees App. at 7, 9. I will deduct these hours, for a total deduction of $982.10.[11]

Accordingly, I award Petitioner a total of **$36,117.77**[12] in attorneys' fees.

## C. Reasonable Costs

Petitioner requests a total of $13,666.97 in attorneys' costs, consisting of: $889.04 for medical record requests; $402.00 for the Court's filing fee; $425.93 for administrative costs; $9,100.00[13] for Dr. Simpson's expert costs; and $1,550.00 for Dr. Lang's expert costs. I will grant the costs associated with medical record requests and the Court's filing fee in full; I discuss the remaining costs below.

### 1. Petitioner's Expert Costs for David Simpson, M.D.

Petitioner requests a total of $9,100.00 for work performed by Dr. Simpson in this case. Dr. Simpson billed 13 hours for medical record review and time consulting with Mr. Daley about this case. ECF No. 88 at 10. Dr. Simpson's requested hourly rate is consistent with what has been awarded by other special masters. *See, e.g., Barrett v. Sec'y of Health & Hum. Servs.*, No. 22-258V, 2024 WL 5298298, at *4 (Fed. Cl. Spec. Mstr. Oct. 30, 2024); *Jao v. Sec'y of Health & Hum. Servs.*, No. 21-2109V, 2025 WL 2955199, at *3 (Fed. Cl. Spec. Mstr. Sep. 18, 2025). I also find his overall number of hours to be reasonable even though he did not produce a report for this case. I will award $9,100.00 for Dr. Simpson's work in this case.

### 2. Petitioner's Expert Costs for Derek Lang, D.O.

Petitioner requests $1,550.00 for work performed by Dr. Lang in this case. Neither Petitioner nor Dr. Lang requests a specific hourly rate, just a total of $1,550.00 for the time spent

---

[11] ($427.00 x 2.3 hrs) = $982.10

[12] $41,630.30 - $2,938.00 - $1,592.43 - $982.10 = $36,117.77

[13] Dr. Simpson's original invoice charged $800.00 per hour and stated he performed 13 hours of work, for a total charge of $10,400.00. However, Mr. Daley and Dr. Simpson later filed statements acknowledging that Dr. Simpson's previously awarded rate in the Vaccine Program was only $700.00 per hour. Petitioner adjusted her request based on the awarded rate, reducing it to $9,100.00.

13

on the five letters/reports he provided for this case.

Dr. Lang is board certified in family medicine and integrative and holistic medicine. Ex. 20.2 at 2. While I do not doubt Dr. Lang's qualifications as a treating physician, he expressed doubts as to whether he was qualified to provide an opinion in this case. *See* Ex. 21 at 7. As this is Dr. Lang's first time opining in the Vaccine Program, and because it is evident that Dr. Lang spent at least a few hours on his reports, I will grant the requested amount in full. I do not endorse any specific hourly rate for Dr. Lang, nor would I necessarily grant his expert costs in the future.

### 3. Miscellaneous Administrative Costs

Mr. Daley included $325.93 in "scanning document" costs and a $100.00 notary invoice. As these are costs associated with litigation, I will grant them in full.

I award Petitioner a total of **$12,366.97** in attorneys' costs.

## VI.   Conclusion

Accordingly, I **GRANT** Petitioner's application and award the following:

Petitioner is awarded attorneys' fees and costs in the total amount of **$48,484.74**, to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this decision.[14]

**IT IS SO ORDERED.**

**s/ Jennifer A. Shah**
Jennifer A. Shah
Special Master

---

[14] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.